David West for the defendant appellant, Bellevue Post Office, LLC. I'm going to try and reserve five minutes of my time for rebuttal. I will watch the clock. This morning I'd like to address two issues that are disputed in the party's briefing but are not well addressed by the briefs, and I'd like to just point out a few facts regarding those matters which I think would benefit the court. The first is whether or not the lease as amended requires notice to all of the owners of the property at various times or whether notice to one party was sufficient. And the second issue is whether the owner of the property had to actually receive the notices as opposed to whether or not sending the notice and receiving a return receipt signed by any person was adequate for the options. Mr. West, before we get to that, help me with what law are we applying here. This is a federal post office. Do we apply federal common law, and if so, what is it? Or do we apply Washington law? There's a little bit of, I would say, uncertainty in the case law about that, Your Honor. The cases have applied. Certainly, federal common law is the law of decision here. And the question is whether or not state law supplements that where there is no federal rule or whether the federal common law would use what we would call, I refer to, I think, as the best of the common law. If we apply federal common law, to what do we look in connection with specific performance of a real estate, in this case, a real estate lease slash option contract? Again, I think you would look to the generally accepted common law throughout the states. You would look at commentators such as Wilson and Corbin, Pomeroy and Equity, those sorts of things. Restatement, that sort of thing? Restatement, yes, sir. Okay. Yes, sir. And... What would be the... The question is, would it matter here in the end? Well, we contend it does not matter in the end, that the Washington law is... There is no contrary federal rule that has been established by any federal court. And so the Washington rule regarding the burden of proof is the rule of decision in this case should be applied in this case. So it would not make a difference. Our position also is that it doesn't really matter whether the court applies that standard of proof or any other standard of proof, because on the authority issue, the evidence was simply insufficient as a matter of law. Well, let's go to the authority issue. Actually, I didn't quite understand the argument that there isn't authority of a warrant, that the one guy and the other guy says he's got authority, and then there's some part of your brief that said there might be a problem. But where do you see the hole in their argument with respect to the federal contracting authority? Certainly. With regard to the first two officers who executed the lease renewal. So the first renewal was executed by a gentleman named Gary Duncan. Mr. Duncan did not recall what his authority was, and the government did not have a warrant for him. So there is no proof of any authority. Forgive me, counsel. I thought that there was a declaration slash affidavit in which people that were in charge at the time said they can't find the particular document. We're talking decades ago. Yes. But that they always had that, and he was confident that they did have that. So far as I know, there is no contrary evidence. Did I miss something? There is contrary evidence with regard to Mr. Logan, who was the second person. Well, I thought we were talking about Mr. Duncan first. There are two contracting authorities. Let's start with Mr. Duncan and sort him out. Why don't we do that? Certainly. So Mr. Duncan did submit a declaration, and Mr. Duncan was the only person who submitted a declaration. There were no supervisors or other people in the office or other folks who had personal knowledge of what happened back in 1982. Mr. Duncan's testimony was that he did work in the Seattle office at that time. He did recognize his signature on the document. He could not remember what the level of his authority was. He did recall having authority. He did recall receiving a warrant. He just couldn't remember how much it was for. And that's the critical fact, because warrants are in certain amounts. Forgive me. I'm just looking at my notes here, and I see that both Duncan and Logan provided declarations. Are you saying that Duncan did – I mean, Logan did not provide a declaration? No, he did provide a declaration as well. Yes. So they both provided declarations, and they both said that they had the contracting authority at the time that they acted. They recognized their signatures, and it was their general practice to clarify and ascertain their authority before signing such documents. Do you agree with that or not? I do not. Okay. There was one statement you said in there, Your Honor, which is not correct, which is that they said they had the contracting authority. They did not remember whether or not they had the contracting authority. Are you sure? They could not recall. Are you sure? Yes, Your Honor. ER-71, ER-64? Yes. So – Let's say hypothetically. Yes. So hypothetically, that they didn't remember. Yes. But they did recognize their signature, and they recognized their normal pattern in the way these things were handled. Correct. Isn't that sufficient? I would say not in this case, Your Honor, because of two reasons. One is that, particularly with Mr. Logan, there was evidence that he had less authority later, which was highly unusual in the description of the Postal Service's own witness. But secondly, we have evidence that the Postal Service routinely made mistakes. The Postal Service makes mistakes? Aren't those usually delivery mistakes? I am shocked. They are actually contracting mistakes. It is a shocking premise. But I don't see how the fact that they can make mistakes – I mean, the question is, we had decades of the lease being basically paid for, enforced. Nobody says, peep, about anything, right? And I don't see how the fact that the Postal Service might make mistakes in other contracting issues raises a material issue effect here. What would be the best authority for that? Well, certainly, if one applies the standard of the Washington cases, which is clear and unequivocal evidence that leaves no doubt as to the existence of the contract, the fact that Mr. Logan's authority was less ten years later than when he signed the second renewal – Forgive me, counsel. Let's turn this around. Let's assume that it was the Postal Service that wanted to get out of this contract. You'd be yelling and screaming about the fact that they had given these declarations, that they had paid the rent for 40 years. How could they possibly be claiming there wasn't a contract, wouldn't you? Isn't that exactly what you would be doing? Absolutely not, because the nature of this – You'd let your client lose out on such a deal? The nature of this contract is these are options. The Postal Service always had the option not to go through with the contract as it evolved over the years. So there's no reason – there's no way for my client to object if the Postal Service decides we're not going to exercise the option. But again, we're in somewhat never-never land because we're talking about federal common law, and yet it's somewhat vague. But there is a covenant of good faith and fair dealing. And you do actually have a very extensive period where both parties acted as if this were an ongoing lease, the rent was paid, people got their money, people cashed their checks. It is, at the very least, ostensible authority, is it not? Ostensible authority is not sufficient to establish a federal contract, Your Honor. There has to be actual authority. That's a black-letter rule. You're saying that the Post Office operated illegally all those years? No. The Post Office occupied the property, and every month after they occupied the property, they paid their rent. They were able to do that legally. You could have had an unlawful detainer action against them at any time, right? Yes. Yes, we could have, had we known. Had you known. I'm still looking for the factual issue because he goes through – I'm talking now about Mr. Logan. I make it a point to be aware of my authority. I signed on behalf of them. I have no reason to think I wouldn't have signed with my – I always signed with delegated authority. A more junior person would have prepared the papers. I recall no time when I exceeded my delegated authority. So what is the evidence that would raise a material fact in contradiction to that affidavit? At least the evidence that Mr. Logan in 2001 had a warrant. It was produced in discovery. It's part of the record. That he did not have adequate contracting authority in 2001 that would have allowed him to exercise a second renewal. He said he didn't have it or he didn't recall. No, there was a warrant. There was a specific warrant that set out the amount of his authority at that time that was produced. Okay. And Art Strange, who was the VP of real estate for the Postal Service, who was their 30B6 designee, testified it would be highly unusual for someone 10 years later to have less authority than they had 10 years earlier. Is that your best argument? That's the best evidence. Well, I would say, and the fact that both gentlemen disclaimed recalling the amount of their actual authority. How old are these gentlemen? How old are they? I don't know the answer to that question. A lot of people don't recall things when they get old. Yeah. They were certainly in their 60s or 70s by the time they signed. Right. And we've had this lease going on for decades. Correct. That's right. And government employees particularly don't remember things when they get old. I'll have to take your word for that, Your Honor. Do you want to save five minutes or do you want to keep going? Well, let me go ahead and talk about the two issues that I think are important. One is whether or not notice to all of the owners was important. Again, the Postal Service testified that notice to all of the owners was required under the lease. That was the testimony of Mr. Strange. It was also their position in discovery. The notice to all was given, although it was given only to one representative, right? In the best scenario, it was only given to one representative. Why is that insufficient? Because the lease requires notice to all of the owners. But why is it notice to, say, you know, one of the however many people there were, addressed to all of them sufficient? Because the lease requires notice to all of them. It wasn't addressed to all of them in the first instance. It was addressed to attorneys in fact in the first instance. Did the lease say you couldn't do that? The lease said you had to give notice to the lessors. It didn't say all. It didn't say all. It said to the lessor. Right, okay, so that's an important point you kept saying to all lessors. It says to the lessors. And so if I write a letter to John, Mary, Paul, and Susan, send it to John, but it's for everybody, haven't I given notice? If you did that, that would be the fact pattern of the second and third and fourth and fifth renewals. It wouldn't be the fact pattern of the first renewal. The first renewal was sent only to Joe Diamond and Ed Ester as attorneys in fact for the owners under the lease. It was not addressed either to the four owners who had held the property at the time of the amendment or to the six owners who actually held the property. Is it kind of late to be complaining about that notice? No, Your Honor, because by operation of law, the lease terminates without an effective notice. That's option law 101, black letter option law. Unless it's waived, huh? No, there's no waiver analysis in the context of an option. It's an operation of law issue. It's a strict construction issue. This court in Cummings v. Bullock said that options are read narrowly, they're construed narrowly, they're construed in favor of the person who granted the option, and although the result might be harsh, that's the nature of options. Well, counsel, with respect, I've written lots of option agreements over the years. Yes, sir. Admittedly, it's California, not Washington, but the reality is this is a very badly drafted lease, and your clients drafted it. Excuse me, Your Honor. And it did not make clear, well, they signed it. This is a postal service form. They signed it. They never gave notice about all of the changes that occurred. It was not specific about who it should go to. The last change was in 1968 that defined the lessor as Edward R. Ester and Lorraine Ester, his wife, and Joseph Diamond and Violet Diamond, his wife, but also to their successors and assigns. And it was never changed after that, and otherwise the change has always said that in every other respect the lease is confirmed. Some of these people were dead. Some of these people had sold their interest. There was never any notice otherwise, and the lease, so far as I can tell, never said whether the written notice had to be given by a particular method, which is very common. It has to be certified mail or whatever. It doesn't say that. It doesn't say that there had to be a separate copy to each individual. It doesn't say whether you could deliver it through an agent. It just didn't say. Now, it's clear under law, as you point out, that if the contract specifies that you have to do certain things, then they have to comply with it. The problem here is that the contract got way, way, way, way out of data. Nobody said anything about it, and the post office continued to do what was done the last time. Nobody said anything. So I think you've got a bit of a problem if you're trying to be too focused on specifics because your people didn't give specifics. The Postal Service admitted in discovery that they had to serve all of the owners. Mr. Strange's testimony. This is my question. In a situation like this one, where you have multiple owners of a property and you haven't received any direction from the owner as to who to notify, you would notify all of them, correct? Answer, correct. Is he a lawyer? He is the designated 30B6 representative of the Postal Service, and he was the vice president of real estate for the Postal Service. Is he a lawyer? No, he was not a lawyer. Okay, so you're asking a legal question to a non-lawyer. I'm asking you as a lawyer how you can say that you have to comply with a specific provision of a document that's not in there. It's in there. I get it. But I don't see that it's in there. I have two answers to that question, Your Honor, and I see my time is up. But if I'll just briefly answer that question. Number one, the amendment to the lease did not include assigns and successors. It did what? The amendment to the lease did not include assigns and successors. I want to point that out because that is a critical. What it said was that in every other respect except how it was amended, that the lease remained the same. And in the previous version, it did say successors and assigns, right? It did, but it also says hereinafter called the lessor. The words hereinafter called the lessor are part of the amendment, and the amendment is what granted the options. The option provision is part of the amendment document. So you cannot divorce that hereinafter called the lessor language from that language. And to the extent that's ambiguous, the Cummings case is the key case. And I'm going to give you the citation of that because it's not in our briefs. 367F2-182. So where did that come from that it wasn't argued? This is a 1966 decision. I guess it was available when you wrote your brief. It was available. It was indeed, Your Honor. And it was available when the Postal Service exercised the options as well. And 367F2-182. And what's the circuit? Ninth Circuit, Your Honor. And I'll just read two quick quotes from that. We can read the case. Thank you. You've exceeded your time. Thank you. I'm sure it's scintillating. Good morning, Your Honors, and may it please the Court. I'm Teal Miller on behalf of the United States Postal Service. I'm going to start with a small issue about contracting authority. I think the Court's question suggests correctly that we established contracting authority under the normal rules of summary judgment by those declarations by the two officials saying, I was careful to act within my authority. Counsel has suggested there's some question about Logan. At page 291 of the excerpts of record, and it's many pages of a deposition, the fourth page has an exchange where Arthur Strange explained that Logan's contracting authority was later diminished after he was moved to a different office. So there really isn't any serious question here that we've proved their contracting authority under the normal rules of summary judgment by providing those declarations saying they were careful, they acted within their authority. Within their experience in the government, they weren't aware of any period in which they'd ever exceeded their contracting authority. Counsel, is there any case law or regulation to which you can cite the Court where you have a similar situation where the regulation says you've got to do X, Y, and Z in order to sign, time goes by, the documents are lost, and the government is trying to assert that it had authority to sign a contract. Is there any case that could help us on that? Well, Your Honor, there are a number of Federal Circuit and Supreme Court and Ninth Circuit cases which recognize as a general principle that when a private party enters into a contract with the government, the onus is on the private party to be sure that the individual who signs the contract for the government has authority to do so. But that is in all the Court of Appeals cases I'm aware of, that's a shield for the government but not a sword for a plaintiff. They can't come in years later. I'm not aware of a case where they come in years later and say, this official, you can't produce a warrant effectively, which is what they're trying to do here. So in other words, assuming that it's just a shield for the government, do we then just apply normal agency law principles on this? Absolutely. When the government comes in and says, here's the contract, here's the signing official, it says contracting official, that establishes the burden. If the other side calls it into question as they did here, we can prove that point the way we did here with testimony. Am I correct that both the declarations of Mr. Duncan and Mr. Logan state that there was authority and that there is nothing to the contrary in the record? Yes, Your Honor. The district court correctly determined that the Postal Service is entitled to specific performance on its purchase option. The Postal Service performed all the material terms of the contract for 50 years. What about the notice point that Your Honor brought up, that notice was not given to all the owners? Well, there are two different notice points. I want to emphasize one first, which is the notice as to the purchase option, which is at page 430 of the record, doesn't even require written notice. It says that the Postal Service must give the lessor notice of election to purchase at least one year in advance. There's no serious question that we complied with that requirement. We have a certified mail return receipt that went to the address of record, and we have a statement by their 30B6 representative that they received the notice. Now, they say we also have to show. Is it the government's position that the purchase option stands alone? Isn't it a part of the lease? Our position is to the extent you're going to apply a heightened standard to our performance, that that heightened standard only applies to the purchase option. We don't have to establish every element of performance or the party's relationship over the last 50 years by a heightened standard. We just have to show that the purchase option was certain. But I think, and the argument that he made, as I understood it, is you might be correct that the notice was given with the one year in advance, but if the option expired or dissipated years earlier because lack of notice to all the lessors, then it wouldn't matter what happened in the most recent incarnation. That is their contention, and that's wrong for a couple of different reasons. First, and most fundamentally, it's wrong on a factual matter. They quibble with several of the lease renewals, most specifically with 1982, but there are three reasons we know why the lease was effectively renewed. First, the government continued to pay rent and defendants continued to accept it. Second, and I think critically, after those renewals, the defendants twice offered a million dollars to the government to strike the purchase option from the lease. If it was their understanding that there was no release after 1982, it would have been nonsensical for them to offer a million dollars to strike the purchase option. Where in the record does that show up? At pages 411 and 475, there are letters. Well, I mean, what does that evidence go to? Is that circumstantial evidence that shows that the lessors recognized the validity of the lease? Yes. Is that why it was presented? Yes, that's right, and the cases, general principles of contract law, established that once a dispute arises about a contract, the best way to tell what the parties understood is to look at what they did before the dispute arose. And so the fact that they were, and the third piece of that circumstantial evidence I was going to point to is that their attorney in 1987 sent a letter to the post office about a dispute about who had to paint it and said, if you don't like our answer, your option is to terminate the lease. Again, affirming that the lease was validly renewed in 1982. So that's the practical response. In effect, you're arguing estoppel, among other things, right? Well, I'm arguing that the lease was effectively renewed because we know, based on their conduct, that that's how the parties acted. That was the parties' understanding at the time. But are you arguing as well that, based on their conduct, they are estopped to claim that the lease was terminated or that the purchase offer was terminated? That's right. We are making both of those arguments. We also have an argument that we did effectively renew it because we provided notice to Edward Esther and Joseph Diamond, and those were the two people who we had most recently been informed, and we were informed of this in the 1968 amendment, where the owners were identified as Esther and his wife and Diamond and his wife and given one single address, and we sent the notice to them at that single address. Now, we didn't name the wives as well, but under general principles of agency, it's more commonplace or it's more readily available to imply an agency relationship between marital partners, particularly in this context when they don't have a separate interest. As I gather, part of the lessors' case goes something like this, that the lessors could, without recognizing the lease, because it was breached in so many ways by the post office, still permit the post office to remain on the premises almost like a tenant will, I guess, or from year to year or something like that and accept rent in exchange for letting the post office occupy the premises, but that doesn't necessarily mean that the lease and the option were still valid. That is their position, that we've been a holdover tenant since 1982, but as I said, they've acted contrary to that understanding in the three ways I've identified. The other thing I think it's important to know is if you have an option, if you are subject to an option to renew a lease, so if you are the lessor and you've given someone an option and that person provides you with imperfect notice, and we know there was some notice in 1982 to at least one of the parties, you have either a right to validate that, if we're correct, that renewing a lease continues the existing contract, or you have a right to either reject the offer. In general, an option is an offer that the lessor can't refuse. So you can either accept it through your conduct when you receive imperfect notice or you can reject it by bringing an action for an ejectment or some other action against the government, and they didn't take any affirmative steps to indicate that they thought we were a holdover tenant, and contrary to that, they took affirmative steps to indicate that they understood that we continued to have a leasehold under the 1963 contract. If the Court has no further questions, we ask that the judgment be affirmed. Thank you. You've used up all your time, but I'm going to give you a minute if you need it. Thank you. I'd like to speak to that last point, Your Honors, which is the notion that when an option is accepted imperfectly, that that creates some sort of a contract if the lessor does not object. That is not the law. That is not what happened in Wapato Heritage. That is not what happened in Sunshine Development. That is not what happened in Kelly. The rule regarding options is you have to comply strictly. That is the black-letter rule. If you do not comply strictly, it's ineffective, and it's not like normal offer and acceptance rules where an acceptance that does not meet the terms of the offer would be a counteroffer under normal contract principles. That's not the rule that applies in options. Counsel, your opposing counsel mentioned that the option came later in the process and that the option itself has virtually no detailed notice requirements in it. Is she correct that we look just at that, or do we refer back to the lease in which it was contained? So just to be clear, Your Honor, the original lease did have renewal options and a purchase option as well. I'm talking about the purchase option. And the purchase option remained in the original lease. It was not altered by the amendment in 1968. And it is a bit looser than the renewal options in that it does not require notice be given in writing. Now, in that particular case where you have a lesser notice with respect to the purchase option, don't we look to the specific instead of the general when we construe a contract generally? We certainly look to the specific. That's correct. We construe options narrowly. That's the rule in the Cummings case. We've got two narrows. It's like signed numbers. Correct. And so when we look at the earlier exercise of the options, it says notice has to be given to the lessor. Counsel said that the first notice was given to one of the lessors. There is no proof of that. The return receipt is illegible. There was no evidence that any of the lessors received that first receipt. No evidence whatsoever. There's evidence that they thought they had a lease. There's evidence that they got the rent all the time and they paid. I mean, they used it. Restatement section 63 of contracts. Unless the offer provides otherwise, an acceptance under an option contract is not operative until received by the offeror. Well, wait a minute. You're talking about different things. I'm not. I'm talking about the fact that that first renewal was not received by my client's predecessors and, therefore, was not effective. We're talking about the purchase option. If you want to talk about that, yes. The purchase option, it came much later. There's clear acknowledgment that that exercise of that option was received. Is there not? It was signed for by Glenda Esther. At the time, the property was owned by Mrs. Lorraine Esther, her mother-in-law, half as her own separate estate and half as the trustee of a trust. And it's your position that unless the government specified the then current ownership as a title insurance company would do, that the option couldn't be exercised correctly. Is that correct? No. It is our position that they have to prove that Mrs. Esther, Glenda Esther, the owner of the property, actually received it. And what do you look to in the lease that says they have to do that? Given to the lessor. That's what the lease says, that the notice has to be given to the lessor. That's the language, contractual language. I guess it depends on how you define given. Thank you for your argument. Thank you. Thank both counsel for your argument this morning, United States Postal Service versus Bellevue Post Office is submitted.
judges: Tashima, McKeown, M. Smith